UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
ROBERT ACOSTA,

                Movant,                22-cv-1774 (PKC)

    -against-

UNITED STATES OF AMERICA,

                Respondent.
-----------------------------------------------------------x
UNITED STATES OF AMERICA,

                                                                   18-cr-80 (PKC)

    -against-                                                    OPINION AND ORDER

ROBERT ACOSTA,

                Defendant.
-----------------------------------------------------------x

CASTEL, U.S.D.J.

       Following a three-week trial, the jury convicted Robert Acosta for his role in the murders of Alex Ventura and Aneudis Almonte on December 22, 1997 in the Bronx, New York. Acosta was convicted of one count of conspiring to commit a murder-for-hire, in violation of 18 U.S.C. § 1958, two counts of the commission of a murder-for-hire, in violation of 18 U.S.C. §§ 1958, 2, and two counts of murder during and in relation to a conspiracy to distribute five kilograms of more of cocaine, in violation of 21 U.S.C. § 848(e)(1)(A) and 18 U.S.C. § 2. The Court sentenced him principally to life imprisonment. Acosta appealed, and the Second Circuit affirmed his conviction. United States v. Acosta, 833 F. App'x 856, 867 (2d Cir. 2020) (summary order).

Acosta now collaterally attacks his conviction, alleging that his lawyers' performance fell below the standard of effectiveness required under the Sixth Amendment, and he seeks to vacate, set aside, or correct his conviction and sentence pursuant to 28 U.S.C. § 2255. (ECF 187; ECF 191-1).  Acosta proceeds pro se, and the Court considers his submissions "to raise the strongest argument that they suggest."  Green v. United States, 260 F.3d 78, 83 (2d Cir. 2001) (internal quotation omitted).  Acosta contends that his lawyers performed ineffectively during plea negotiations with the government before trial, during his trial, and during his sentencing.[1]

For reasons that will be explained, the Court concludes that Acosta's contentions are meritless, and denies his petition.

Discussion

Acosta must satisfy a two-prong test to establish that he received constitutionally ineffective assistance from his trial lawyers.  First, he must overcome a presumption of effective representation by presenting evidence that his counsels' performance fell below an objective standard of reasonableness based on prevailing professional norms.  Strickland v. Washington, 466 U.S. 668, 688 (1984).  Second, he must show that he suffered actual prejudice due to his counsels' deficient performance.  It is not enough to show that his counsels' errors had "some conceivable effect" on the outcome.  Id. at 693.  Rather, Acosta "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id. at 694.

---

[1] Acosta also challenges the sufficiency of the evidence presented at trial showing that the murder of Ventura and Almonte was part of a drug conspiracy. (ECF 191-1, at ¶¶ 27-30).  This argument was rejected by the Second Circuit on Acosta's direct appeal.  United States v. Acosta, 833 F. App'x 856, 862 (2d Cir. 2020) ("The government introduced a plethora of evidence to support a rational finding by the jury that Acosta was actively engaged in an ongoing drug conspiracy at the time of the murders.").  Accordingly, Acosta's argument is procedurally barred on collateral review.  Cabrera v. United States, 972 F.2d 23, 25 (2d Cir. 1992) (collecting cases establishing that § 2255 may not be used to relitigate question raised and considered on direct appeal).

I.  Acosta Suffered No Prejudice from Counsels' Performance
    During Plea Negotiations with the Government

Acosta asserts that he repeatedly asked his lawyers to pursue a plea offer from the Government, but his lawyers never asked the government if a plea deal was available. (ECF 191-1, at ¶ 6). Rather, Acosta alleges, his lawyers urged him to continue to trial; he alleges that Barry Weinstein insisted that the jury would "never convict" Acosta, and told Acosta that he "could get [Acosta] a fifteen (15) year offer but, why you are [sic] going to accept responsibility when I know you are innocent? As I told you from the beginning of the case we are here to fight . . . . so we should continue to trial." (Id. at ¶¶ 6, 12).

Acosta's lawyers filed affidavits with the Court denying Acosta's rendition of these events. (See ECF 194-1, 194-2). Weinstein states that Acosta's "claim [Weinstein] stated 'I could get you a fifteen (15) year offer . . . .' is a total lie. There was never any such conversation. I explained to him in no uncertain terms, that the judge in federal court is the only one who sets the sentence." (ECF 1941-1, at ¶ 3). Weinstein continues that the rest of the alleged statement is "total fiction." (Id.). Weinstein says that Acosta "never requested I inquire of the Government of a possible plea offer" and "was adamant about not accepting any guilty plea." (Id.). Acosta "was always adamant about going to trial and did not want hear any discussion about a plea." (Id.). Acosta's other lawyer, Bruce Koffsky, states that "any and all conversations between myself and Acosta or between myself and Attorney Weinstein about Acosta's involvement in the crimes alleged concerned Acosta's protestations of his innocence and his disbelief that he would be convicted for acts that had occurred 20 years in the past." (ECF 194-2, at ¶ 10). Koffsky says that "Acosta never indicated anything other than he was innocent of the allegations" and "wanted to proceed to trial and secure his acquittal." (Id. at ¶ 11). Koffsky "recall[s] no conversations with the government that discussed any pretrial

3

resolution of the Acosta matter and I can recall no potential plea agreement being offered to Acosta through either of his counsel." (Id.).

Based on the affidavits from Acosta's lawyers, the Court doubts the veracity of Acosta's statements in his memorandum. Assuming their truth, however, the Court concludes that Acosta has not established that he suffered actual prejudice under the second prong of the Strickland test. The government points out that "it is undisputed that the Government never extended a plea offer to [Acosta], and there is no evidence to suggest that the Government would have extended an offer to [Acosta] had it been approached." (ECF 194, at 10). Without a plea offer available to Acosta, the result of the proceeding would have been no different had Acosta's lawyers asked the government if one were available. Further, even if a plea offer had been available to Acosta, he has not claimed that he would have accepted it. When a petitioner claims that his counsels' ineffective assistance led to a petitioner going to trial rather than pleading guilty, the petitioner must show that but for his lawyers' actions, he would have accepted the plea offer. Puglisi v. United States, 586 F.3d 209, 215-16 (2d Cir. 2009). At a minimum, this requires a sworn statement from the petitioner stating that he would have accepted a plea offer. See id. Acosta has failed to provide any statement that he would have accepted the government's plea offer; rather, he states he would have "considered the offer." (ECF 191-1, at ¶ 12). It is sheer speculation whether an offer would have been made by the government, what its terms would have been, and whether Acosta would have accepted those terms.[2] The Court concludes that there is not a reasonable probability Acosta's proceeding would have been different had his counsel requested that the government extend a plea offer to Acosta.

---

[2] Acosta does not explain why the government would have been motivated to extend to him a plea offer that did not require him to admit to one or both murders and why such an admission would not have exposed him to a prison sentence that, at least, would have been the functional equivalent of life imprisonment.

4

II.     Acosta Received Effective Assistance of Counsel During Trial

In determining whether Acosta's "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," the Court "indulge[s] a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . [and] might be considered sound trial strategy." Strickland, 466 U.S. at 687, 689 (internal quotations omitted). Indeed, "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Id. at 686.

The Court concludes that the performance of Acosta's counsel during trial fell within the wide range of reasonable professional assistance. Acosta alleges that his lawyers failed to challenge the government's case through cross-examination of the government's witnesses and wrongly chose not to call Acosta's family members to testify in his defense. (ECF 191-1, at ¶¶ 17, 21). Acosta's allegation that his counsel failed to cross-examine the government's witnesses is flatly contradicted by the record. Over the course of a three-week trial, his lawyers extensively challenged the government's case through cross-examination of the government's witnesses. Contrary to Acosta's assertions, the key witness, Richard Collado, was cross-examined by Acosta's lawyers over several days. (Tr. 667:5-696:15, 706:10-763:8, 773:13-803:19, 806:8-837:7, 846:22-878:21, 887:5-899:3). Indeed, at sentencing, the Court commended Acosta's lawyers "for living up to the highest norms of this profession in doing their job and doing it well in representing their clients." (ECF 184, at 15).

Similarly, the strategic decision made by Acosta's lawyers not to call any of Acosta's family members to testify was not ineffective representation. Weinstein states in his affidavit that he "interviewed several of Mr. Acevedo-Acosta's friends and relatives to see if

there was a credible, favorable witness among them, unfortunately for the petitioner, there were none. Each person I spoke to knew the petitioner had been in the drug business for many years. Any possible witness would have helped the Government's case with respect to the drug conspiracy aspect of the allegations." (ECF 194-1, at 3-4). This sort of tactical decision "is ordinarily not viewed as a lapse in professional representation." United States v. Schmidt, 105 F.3d 82, 90 (2d Cir. 1997). Indeed, "[t]he decision whether to call any witnesses on behalf of the defendant, and if so which witnesses to call, is a tactical decision of the sort engaged in by defense attorneys in almost every trial." United States v. Smith, 198 F.3d 377, 386 (2d Cir. 1999) (internal quotations omitted). Acosta does not state how the testimony of his family members would have assisted his defense, and his lawyers made the reasonable tactical decision that any benefit was outweighed by the potential damage to Acosta's case on cross-examination.

    III.    Acosta Received Effective Representation of Counsel at Sentencing and Suffered No Prejudice From Counsels' Performance During Sentencing

Acosta's was convicted of two counts of the commission of a murder-for-hire, in violation of 18 U.S.C. § 1958. The mandatory minimum sentence for committing this offense is life imprisonment. 18 U.S.C. § 1958(a). Acosta's contention that he received ineffective assistance of counsel during sentencing because his counsel failed to raise mitigating factors pursuant to 18 U.S.C. § 3553(a) is meritless. Because the Court was required by statute to impose a sentence of life imprisonment, argument from Acosta's counsel about mitigating factors could not alter the mandatory minimum sentence. An attorney's decision not to raise an argument that has no prospect of success is not grounds for an ineffective assistance claim. See United States v. Arena, 180 F.3d 380, 396 (2d Cir. 1999) (abrogated on other grounds).

6

CONCLUSION

The Court has considered the entirety of Acosta's arguments and finds them to be without merit. His motion to vacate, set aside or correct his conviction and sentence pursuant to 28 U.S.C. § 2255 is DENIED.

The Clerk is directed to terminate the motion (ECF 1 in 22-cv-1774 (PKC) and ECF 187 in 18-cr-80 (PKC)) and close 22-cv-1774 (PKC).

Acosta has not made a substantial showing of the denial of a constitutional right, and accordingly, a certificate of appealability will not issue.  28 U.S.C. § 2253; see Blackman v. Ercole, 661 F.3d 161, 163-64 (2d Cir. 2011).  The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this order would not be taken in good faith and therefore in forma pauperis status is denied for the purpose of an appeal.  See Coppedge v. United States, 369 U.S. 438, 444-45 (1962).

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated:  New York, New York
        October 24, 2023